UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BELHIA V. MARTIN<br>Plaintiff | CIVIL ACTION<br>**04-2712**<br>NUMBER:<br>**SECT. B MAG. 2**<br>SECTION: |
| VERSUS | |
| LOYOLA UNIVERSITY | |
| Defendant | MAG. DIV. |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes BELHIA V. MARTIN, Plaintiff herein, and respectfully represents:

### I. JURISDICTION

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. " 1331 and 2202, Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act, 29 U.S.C. 621, *et seq*. On November 25, 2003, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), contending that she was wrongfully discharged due to race, national origin and age. She was fired by defendant on December 2, 2003. She filed an amended charge on December 17, 2003 based on retaliation for filing a charge of employment discrimination. A Notice of Right to Sue letter, dated June 30, 2004, was received by her on or about July 2, 2004. This lawsuit is filed within ninety (90) days of receipt of said letter.

2.  Supplemental jurisdiction is invoked as to those matters cognizable pursuant to the Constitution and laws of the State of Louisiana.

## II. **PARTIES**

3.  Plaintiff herein is BELHIA V. MARTIN, a person of full age of majority and domiciled in the Parish of Orleans, State of Louisiana. Plaintiff was employed with defendant, Loyola University, from July 15, 2002, until December 2, 2003, in the capacity of career counselor/coordinator. On December 2, 2003, she was wrongfully discharged.

4.  Defendant herein is LOYOLA UNIVERSITY, 6363 St. Charles Avenue, New Orleans, Louisiana, an employer within the meaning of 42 U.S.C. 2000e (b), and at all times relevant hereto, employer of plaintiff.

## III. **FACTS**

5.  The plaintiff is an alumnus of Loyola University (1975) and Loyola University New Orleans School of Law (1978).

6.  Plaintiff was hired as career counselor /coordinator at Loyola University New Orleans School of Law.

7.  Plaintiff was invited to apply for the position of Career Counselor/Coordinator by the Director of Career Services at Loyola University New Orleans School of Law in May 2002.

8.  At that time plaintiff was practicing law in Baltimore Maryland and had lived away from New Orleans for over nine years. She accepted the invitation to be reunited with the University and the law school and looked forward to a long lasting relationship.

9.  In her capacity as Career Counselor/Coordinator plaintiff was required to handle diversity programming, judicial clerkships and government employment. She was the only African American in the career counseling office. The other employees included Pam Occhipinti, (hereinafter Occhipinti) a white female supervisor, another white female career counselor who began employment at the same time as plaintiff, and a white female administrative assistant to the supervisor only.

10. Occhipinti's supervisor on the date Petitioner was hired was James Klebba, Dean of the law school. James Klebba was Occhipinti's supervisor during most of petitioner's tenure at the law school. Occhipinti also indicated that Andi Piacun, the law school accountant, was her supervisor as it related to money matters.

11. A few weeks before plaintiff's termination, Brian Bromberger served as Dean. Brian Bromberger and Pam Occhipinti fired the plaintiff.

12. In her capacity as career/counselor coordinator the plaintiff was required to work long hours and do extensive traveling and networking. In this regard, her supervisor, Pam Occhipinti, informed her that all hours including events away from the office, doctor's appointments and any activities as it relate to her job were under the sole discretion of Occhipint. This was especially true since the University had a written policy that stated that no employee could use vacation time for the first twelve months of employment.

13. Plaintiff was told that all other policies, as it related to compensatory time was discretionary and based on Occhipinti's assessment of workload. In addition, there were no written office hours. Occhipinti decided which dates would be considered late or timely. When plaintiff inquired about this she was written up and told that she was late.

14. In addition, if plaintiff had doctor's appointments or emergencies it was considered unauthorized time form the office.

15. Plaintiff was required to create, plan, coordinate and schedule events including service providers and all other matters as it related to programming. When plaintiff asked Ms. Occhipinti for a budget within which to handle this, she was told that there was no budget.

16. Later, when the plaintiff made all necessary arrangements for a successful programming, she was told that she went out of the budget and acted without authority.

17. Plaintiff performed her duties admirably and was recognized by her colleagues in the legal profession. Ms. Occhipinti responded negatively to these comments instead of applauding Ms. Martin for her accomplishments.

18. In her capacity as Career counselor/coordinator, plaintiff was required to travel for job fairs, conferences and training. In some instances Ms. Occhipint would state that Plaintiff was authorized to be absent from the office as compensation for the long hours required for the trips. However, on return from the trips, after plaintiff would have filled and signed her time sheets, Occhipinti changed the sheets to reflect non-compensated time.

19. Occhipinti would not tell plaintiff of these changes when she made them. Plaintiff did not learn of this until her checks reflected this. Plaintiff was required to request copies of the time sheets from payroll and human resources.

20. In addition, Occhipinti withheld travel expense sheets after plaintiff gave them to her. Payrolls would then site plaintiff for the delay and withhold the check necessary for the following trip.   In comparison, Occhipinti had a University charge card, which she used at her discretion, precluding her from having to use her own money and seeking reimbursement.

21. Occhipinti and plaintiff are attorneys and consequently were required to meet the membership dues requirement and continual education requirements. Occhipinti and the accountant for the law school, Andi Piacin, decided that only Occhipinti's full bar dues should be paid. Occhipinti sent the request for dues to accounting without requesting the secondary payment. This resulted in plaintiff being delinquent and being placed on the non-eligibility list of the Louisiana State Bar Association, which was published in the Bar Journal. This caused the plaintiff embarrassment and money.

22. Occhipinti spoke rudely and in a loud voice to plaintiff at the work place.  When plaintiff spoke with Ochipinti about this she laughed and stated that this was a cultural practice, which

she did not intend to change. In addition, Occhipinti slammed plaintiff's office door in her face and at times seemed uncontrollable.

23. Based on her many accomplishments, plaintiff reasonably believed that she would be retained by defendant. In fact, she thought that the previously scheduled meeting with Dean Bromberger and Occhipinti would give her an opportunity to address some of her grievances in order to improve the working conditions. Instead she entered the room and sat down, and was immediately told by Dran Bromberger that upon viewing documents before him, she was fired.

24. Plaintiff asked Dean Bromberger what documents and whether she could see them. Bromberger said that Louisiana was an employment at will state, and that she was to leave the premises immediately. Occhipinti added that all items from plaintiff's office would be shipped to her.

25. Plaintiff inquired from the Dean whether this was within University policy. He then said that plaintiff could take her items. Plaintiff was then escorted by a security guard from the Dean's office, told to return her keys immediately, and was watched while she removed her items.

26. Occhipinti stood in the waiting area of the Career Services Office and watched plaintiff remove her items while laughing and chatting with two students and the other career counselor.

27. Plaintiff, subsequently discovered the true reason for her termination: Loyola University Law School was cited by the American Bar Association's certification committee for its failure to meet the needs of minority students. Her position was created to rectify this situation. Another African American female held the position prior to the plaintiff. She remained in the position for only one year. The actions of the University indicated a token effort to comply with the requirements of the ABA.. Since firing plaintiff, the University has hired two white females in the office of law school Office of Career Services.

Page -5-

28. Another incident which indicated that the University only sought a token effort to assist minority students and encourage diversity was Occhipinti's reactions and comments to plaintiff's programming efforts: After attending the American Bar Association's conference on diversity, plaintiff prepared a power point presentation for students. After describing in detail the glaring statistics on the disparity in job placement among minorities in comparison to whites, Occhipinti told plaintiff that only the minority students should be invited. Plaintiff objected to this and requested an invitation be sent to all students. Occhipinti had this done by support staff at the end of the day. In addition, after so few students attended, Occhipinti said that we were just required to plan the events and that it did not matter how many students attended.

29. Occhipinti often referred to plaintiff, who was 50 years old when discharged, as a mother image to students, causing some alienation and limitations in plaintiff's dealings with students. She also compared plaintiff to the younger white career counselor who was 24 years old at the time of plaintiff's discharge.

30. As coordinator for diversity programming, plaintiff attended the Annual Asian Pacific job fair and conference in Atlanta, Georgia in 2002. Plaintiff's work with the students at the job fair and conference proved to be a success for the students attending and resulted in Loyola law school placing third in the region in the Thomas Tang Moot Court competition. This further awarded them the opportunity to participate in the national competition in Hawaii for 2003.

31. Occhipinti indicated that since the conference was being held in Hawaii, she also wanted to attend. Occhipinti indicated that she was concerned that Piacun would not okay the trip for her.

32. She directed plaintiff to write a memorandum to Andi Piacun giving the dates and cost of the conference in comparison to the Atlanta conference the year before. Plaintiff did this.. To justify her trip she stated that she would plan activities with the University of Hawaii Law

School students and the Loyola students attending the conference. Occhipinti scheduled and booked hotel and plane accommodations for herself and the plaintiff to arrive two days before the conference.

33. Occhipinti could not be reached for the first 2 days in Hawaii. In comparison, plaintiff visited the University of Hawaii law school prior to the conference. She met the Dean of the law school, the director of the Office of Career services, the coordinator of a program for the elderly and spoke with the Asian Pacific Organization at the law school.

34. A few days after returning from the Hawaii conference, Occhipinti announced to plaintiff that she was to reimburse the university for two days prior to the conference. Plaintiff stated that this was inappropriate and unfair in comparison to what was done for the other career counselors, both of whom are white.

35. Plaintiff expected to talk with the Dean of the law school and Occhipinti concerning this matter at the December 2, 2004 meeting. Instead she was fired as was more fully described above.

36. Occhipinti sent plaintiff a curt e-mail note stating that a meeting was scheduled with her and the Dean on December 2, 2003. When plaintiff asked inquired as to the subject of the meeting, she was told by Occhipiti through e-mail that the subject was "traveling".

37. On November 25, 2003, plaintiff reviewed her personnel file and learned that the attachments to her evaluations which included commendations were not in the file. Plaintiff left the human resource office and filed a complaint at the Office of the Equal Employment Opportunity Commission.

38. Given plaintiff's devotion and dedication to the university and law school, plaintiff had every expectation of being retained as the Career Counselor Coordinator at the law school. She had just become vested in her retirement and had gained the right to fringe benefits. She was excited about returning home to her alma mater , reuniting with friends and colleagues and

growing with the law school. Instead she has been forced into a strained job market at the age of 50, and forced into building a private practice after a ten year hiatus from New Orleans.

39. As a result of defendant's actions, plaintiff experienced, and continues to experience, anger, frustration, embarrassment, severe emotional distress, depression and anxiety.

## IV.    CAUSES OF ACTION

40. Defendant, acting through its agents and employees, terminated plaintiff because of her race, national origin and age, in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act, 29 U.S.C. 621, *et seq.*

41. After plaintiff filed a charge based on discrimination, Defendant, acting through its agents, terminated plaintiff at a meeting previously scheduled to discuss "travel". This was sudden, without warning and exercised in a cruel and unusual manner. It caused tremendous embarrassment and humiliation to plaintiff.

## V.    RELIEF

42. Wherefore, Plaintiff prays that the Court:

    a. Enter a declaratory judgment that the aforementioned facts and practices of defendants are in violation of the constitution and laws of the United States and the State of Louisiana.

    b. Enter judgment in favor of plaintiff, and against defendant, finding that defendant, acting through its agents and employees (1) terminated plaintiff because of her age, race and national origin, (2) terminated plaintiff under circumstances which caused her to experience anger, frustration, embarrassment, severe emotional distress, depression and anxiety, and (3) unlawfully retaliated against plaintiff for the filing of her initial EEO complaint based upon age, race and national origin.

    c. Enter judgment in favor of plaintiff, and against defendants, awarding special, general, compensatory and punitive damages.

   d. Award plaintiff the costs of this litigation, including reasonable attorney's fees.

Respectfully Submitted

John-Michael Lawrence, 08143
John-Michael Lawrence, PLC
Energy Center – 2900/PMB 204
1100 Poydras Street
New Orleans, Louisiana 70163-2900
Tel. 504.585-7797
Fax 504.282-5698